**ORAZIO, ET AL**      *      NO. 2021-CA-0032

**VERSUS**      *

**DEPARTMENT OF POLICE**      *      **COURT OF APPEAL**

     **FOURTH CIRCUIT**

     *

     **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 7893
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Tiffany G. Chase, Judge Dale N. Atkins)

Eric J. Hessler
2802 Tulane Avenue, Suite 102
New Orleans, LA 70119

Raymond Charles Burkart, Jr.
THE LAW OFFICES OF RAYMOND C. BURKART, JR., L.L.C.
321 North Florida Street, Suite 104
Covington, LA 70433

     COUNSEL FOR PLAINTIFF/APPELLANT

Elizabeth Robins
DEPUTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
William R. H. Goforth
ASSISTANT CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEUPTY CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLEE

     **REVERSED AND REMANDED**
     **May 19, 2021**

This is the fourth appeal in this civil service case. The factual and procedural background of this case is set forth in this court's three earlier opinions—*Orazio v. City of New Orleans*, 12-0423 (La. App. 4 Cir. 1/16/13), 108 So.3d 284 ("*Orazio 1*"); *Orazio v. Dep't of Police*, 17-1035 (La. App. 4 Cir. 5/23/18), 248 So.3d 745 ("*Orazio 2*"); and *Orazio v. Dep't of Police*, 19-0230 (La. App. 4 Cir. 6/19/19), 275 So.3d 340, *writ denied*, 19-01174 (La. 10/15/19), 280 So.3d 609 ("*Orazio 3*"). In this appeal, the narrow issue is whether the Commission erred in denying the petition for back pay—premised primarily on *Orazio 3*—filed by current or former New Orleans Police Department ("NOPD") Captains and one Major who were not appointed to any of the Commander positions (collectively "Employees").[1] For the reasons that follow, we reverse and remand for an evidentiary hearing.

To place the issue in context requires a review of the development of the Commander position within the NOPD and the complex procedural background of

---

[1] Employees are Norvel Orazio; Michael Glasser; Harry Mendoza; Rose Duryea, Frederick Morton; Jerome Laviolette; Raymond C. Burkart, Jr.; James Scott; Joseph Waguespack; Heather Kouts; William Ceravolo; Simon Hargrove; and Bruce Adams.

1

this case, which has been pending before the City of New Orleans' Civil Service

Commission (the "Commission") since 2011.

*Commander Position*

As we observed in *Orazio 3*, there have been three iterations of the

Commander position:

- *Colonel* (Classified[2])—In October 2010, then-Superintendent Ronal Serpas requested the creation of a hybrid job position to be labeled "Colonel"—a management position "similar to police major and/or police colonel (new title) with a fifteen (15%) difference between current base pay of police captain and police major";

- *Special Rate of Pay Assignment* (Classified)—In March 2011, in lieu of the requested Colonel position, a special rate of pay rule—referred to as "Commanders' special rate of pay assignment"—was approved by the Commission. The special rate of pay assignment was, in essence, a temporary, special job assignment accompanied with a special rate of pay. The special rate of pay assignments were made at the Superintendent's discretion, and the persons discharging these assignments were classified employees; and

- *Commander* (Unclassified)—In February 2017, then-Superintendent Michael Harrison requested that the Commission approve sixteen

---

[2] The Louisiana Constitution provides that "[t]he state and city civil service is divided into the unclassified and the classified service. Persons not included in the unclassified service are in the classified service." La Const. art. X, § 2(A). The Constitution enumerates the unclassified service positions and includes a catchall provision: "[a]dditional positions may be added to the unclassified service and those positions may be revoked by rules adopted by a commission." La. Const. art. X, § 2(B); *Orazio 3*, 19-0230, p. 12, 275 So.3d at 347. Pursuant to the catchall provision, the Commission has adopted Civil Service Rule III, § 7.1, which provides:

At its discretion, the City Civil Service Commission may add additional positions to the unclassified service, if:

(a) after a thorough review and analysis of the duties and responsibilities of the position, the Commission has determined that they neither are appropriate for, nor should they be performed by, a classified employee and,

(b) the position is essentially of a sensitive nature, having considerable discretion and policy-making authority, which is not subject to further review or modification and,

(c) the position is audited on a regular basis by the Civil Service Department to determine the continuing appropriateness of the unclassified status.

unclassified Commander positions to replace the Commander special rate of pay assignments. The Commission approved the request in 2017 and reapproved it in 2018.

*Procedural Background*

The procedural background of this case is set forth in this court's three earlier opinions; a brief synopsis of the earlier opinions is as follows:

- In *Orazio 1*, the issue was whether the Commission acted arbitrarily and capriciously when it denied a request for an investigation and a contradictory hearing regarding the creation of the Commander position. 12-0423, pp. 3-4, 108 So.3d at 287. Citing La. R.S. 33:2397(4) and Civil Service Rule III, § 7.36[3] as providing the authority for the Commission to conduct an investigation and to hold an evidentiary hearing, we held that an investigation coupled with an evidentiary hearing regarding the creation of the Commander position was required. In so holding, we observed that "[t]he record before us connotes the questionability of the classified or unclassified nature of the 'job assignment' or 'position'" and that "[a]n investigation would ensure ... 'the integrity of the merit system' and protect an 'equitable relationship between positions in the classified and unclassified services.'" *Orazio 1*, 12-0423, p. 5, 108 So.3d at 287-88 (quoting Rule III, § 7.3).

- In *Orazio 2*, the issue was whether the Commission's creation of sixteen unclassified Commander positions exceeded its constitutional and statutory authority. We observed that the Louisiana Constitution authorizes the Commission to adopt its own rules regarding the adding and revoking of unclassified positions and that the statutory provisions grant the Commission discretionary authority. Affirming the Commission's action, we reasoned that the constitutional and statutory provisions, read together, authorized the Commission to create additional unclassified positions and that the Commission's action "align[ed] with its authority afforded by the constitution and the civil service rules." *Orazio 2*, 17-1035, p. 12, 248 So.3d at 752; and

- In *Orazio 3,* the issue was whether the Commission erred in reapproving the sixteen unclassified Commander positions. Answering that question in the affirmative, we held that "[g]iven the record does not support a finding that any of the three factors set forth in Civil Service Rule III, § 7.1 is satisfied, the Commission's ruling reauthorizing the sixteen unclassified Commander positions is manifestly erroneous." *Orazio 3*, 19-0230, p. 20, 275 So.3d at 352.

---

[3] The references elsewhere in this opinion to "Rule" is to the Civil Service Rules of the Commission.

After this court issued its decision in *Orazio 3*, Employees filed a petition with the Commission requesting, among other things, back pay. The Commission deferred addressing Employees' back pay request until after the Supreme Court denied the NOPD's writ application in *Orazio 3*. On February 20, 2020, the Commission, in a split (4-to-1) decision, denied Employees' back pay request. In its reasons for denying the request, the Commission made the following key points:

- The Fourth Circuit [in *Orazio 3*] did not instruct the Commission to award back pay to any Captain or Major based on its ruling about whether the position of Commander should be unclassified or classified.

- The Commanders "were performing more onerous job duties than Captains or Majors," even if the Captains and Majors were "qualified to perform the job duties."[4]

- The Captains seeking back pay were not tasked with the same level of supervision or administrative duties as the officers serving in the position of Commander.

- The Fourth Circuit's holding that Commanders were performing duties performed by classified officers does not necessarily mean that Commanders were exclusively performing the duties of either the class of Captain or the class of Major. Therefore, Petitioners' claim for back pay based on unequal pay is denied. Likewise, the request for attorney's fees is denied.

- To the extent Petitioners assert discrimination claims distinct from claims based on unequal application of the uniform pay plan, the Commission denied these claims at this time based on the record before it.

Concurring, one commissioner additionally observed that "the Commission is not required to award back pay to Captains who did not work as Commanders or receive higher rates of pay as Commanders." As discussed elsewhere in this opinion, the dissenting commissioner would have awarded back pay to all affected

---

[4] The majority reasoned that, contrary to the City's contention, Employees "seek back pay . . . not general money damages, based on performance of equal job duties for lower pay." The majority further reasoned that classified employees have a right of appeal based on unequal application of the schedule of pay for positions in the City of New Orleans uniform pay plan. The majority then observed that the comparators must hold positions in the same classification.

Captains "beginning June 26, 2016" pursuant to Rule IV, § 15.1.[5] This appeal followed.

## STANDARD OF REVIEW

As we observed in *Orazio 3*, the governing, multi-faceted standard of review in civil service cases is as follows:

- An appellate court reviews factual findings in a civil service case under the manifest error or clearly erroneous standard of review. An appellate court accords great deference to mixed questions of fact and law;

- The issue of whether the Commission's actions exceed its authority presents an interpretation of fact and law governed by the manifest error or clearly erroneous standard of review; and

- When the Commission's decision involves legal issues such as jurisdiction, procedure, and interpretation of laws or regulations, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record.

*Orazio 3*, 19-0230, pp. 7-8, 275 So.3d at 345 (internal citations and quotations omitted); *see also Russell v. Mosquito Control Bd*., 06-0346, pp. 7-8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40.

## DISCUSSION

On appeal, Employees' principal argument is that the Commission erred in failing to award them back pay retroactive from November 7, 2019—when all Captains received substantial pay increases—to March 1, 2011—when the special rate of pay assignment was approved. Employees' back pay claim is premised primarily on *Orazio 3*, which reversed the reauthorization of the sixteen

---

[5] Rule IV, § 15.1 provides that "[a]ny claim for back pay brought by an employee in the classified service based upon the application of the Pay Plan or the rules regarding classification and compensation must be submitted in writing, to the Personnel Director no later than three years from the date that the employee knew, or should have known, about the facts giving rise to the claim."

unclassified Commander positions. Employees suggest that *Orazio 3* dictates an award of back pay to them at the Commander's rate of pay. In support, Employees cite this court's statement in *Orazio 3* that the Commander position, in all its iterations, is indistinguishable from the classified positions of Major and Captain. Indeed, Employees contend, in their brief to this court, that the Commission "cherry-picked portions of *Orazio 3* and applied its own spin on the decision in an effort to support its order denying [Employees'] back pay." Contrary to Employees' contention, *Orazio 3* neither addressed nor awarded back pay.

The other basis on which Employees premise their back pay claim is discriminatory pay. The minutes from the Commission's November 18, 2019 meeting reflect the following discussion regarding the discriminatory pay basis of Employees' back pay claim:

> Based on the Commission's mandate to implement a uniform system of classification and compensation, it is clear that since 2011 all employees have been in the same uniform classification although there was discriminatory pay that was mistakenly given. Back pay to 2011 is required. Raymond Burkart, representing PANO [the Police Association of New Orleans], stated that while these pay raises were given, he and the Captains were assigned to a trailer performing Sergeant and Lieutenant work. They were willing and able to perform the functions of Captain and Major. The appointing authorities chose not to use them and instead used Lieutenants to perform the work. It started as a special assignment and then became an unclassified position in 2017 and they were awarded $15,000-$20,000 more than Captains and Majors.

> Commissioner Surprenant stated the city's memo in opposition says the petitioners were never appointed to the unclassified positon of Commander so they cannot receive back pay for a position they never held nor can they receive back pay not provided for in the Pay Plan or the Rules. Mr. Burkart responded that it is discrimination. They did not choose those positions, the appointing authority did. The Commission has an obligation to have a hearing on it. They wanted to run older, more experienced officers out because they somehow felt we would be opposed to the Consent Decree. Commissioner Surprenant noted the city states no law allows for a retroactive increase in pay. He asked Mr. Burkart if there is any such law. Mr.

Burkart responded that yes. Civil Service can rectify discrimination. The Commission is obligated to make it right.

During the entire period for which Employees seek back pay, they worked as Captains and were paid as such.[6] Following *Orazio 3*, however, as the dissenting commissioner observed, "all 16 Commanders [now] are working as Captains, either because the former Commander returned to that classified rank or because the former Commander is appointed as a Captain provisionally under our Rules." As the dissenting commissioner further observed, "[f]ollowing *Orazio 3*, as of November 7, 2019, all Captains (including former Commanders) received a pay increase to the salary unclassified Commanders were receiving." Thus, following *Orazio 3*, Captains' salaries were raised to that of Commanders.

Given the NOPD's current treatment of Commanders the same as Captains, the issue presented here is whether the duties of Commanders and Captain were different in any way. During oral argument before this court, the attorneys for both sides were asked this question. Employees' attorney answered that the duties were not different. Although the NOPD's attorney answered that the duties were different, the NOPD's attorney acknowledged that there was very little evidence in the record regarding the duties of respective positions.

This court has recognized that La. R.S. 33:2397(4) allows the Commission to conduct "any investigation concerning the administration of personnel in the city service." *See Crescent City Lodge #2, Fraternal Order of Police, Inc. v. New*

---

[6] *See Chaisson v. Dep't of Police*, 556 So.2d 73, 74-75 (La. App. 4th Cir. 1989) (affirming Commission's decision denying increased compensation given testimony that "clarified the difference between appellant's situation and the situation of other officers receiving increased pay"); *Smith v. Civil Serv. Comm'n*, 19-0393, p. 6 (La. App. 4 Cir. 11/27/19), 286 So.3d 458, 461 (observing that "[b]ecause Appellant does not occupy the same job classification as the employee to whom she compared herself, she is not entitled to retroactive increased pay pursuant to the CSC Rule IV, § 2.7(d)").

*Orleans Civil Serv. Comm'n*, 20-0411, p. 4 (La. App. 4 Cir. 2/17/21), ___ So.3d ___ , 2021 WL 626483; *Orazio 1*, 12-0423, p. 5, 108 So.3d at 287. In this case, we find the interests of justice dictate that the matter be remanded for a full evidentiary hearing on two issues: (i) whether the duties of Commander and Captain were different; and (ii) when the Captains first made a claim for back pay given the three-year prescriptive period in Rule IV, § 15.1.[7] Given our finding that a remand for an evidentiary hearing is required, we pretermit addressing the other issues raised by Employees.

## <u>DECREE</u>

For the foregoing reasons, we reverse the Commission's February 17, 2020 and February 20, 2020 rulings and remand for a full evidentiary hearing on the issues of whether the duties of Commanders and Captains were different and when Employees made their initial claim for back pay.

**REVERSED AND REMANDED**

---

[7] The dissenting commissioner, as noted earlier, indicated that he would have awarded back pay to all affected Captains "beginning June 26, 2016" pursuant to Rule IV, § 15.1.